IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK ELFERS, derivatively on behalf
of ABBVIE, Inc.,

    *Plaintiff*,

    v.

RICHARD A. GONZALEZ, et al.,

    *Defendants*, and

ABBVIE, Inc.,

    *Nominal defendant*.

No. 1:20-cv-00213-SB

---

Ryan M. Ernst, O'KELLEY & ERNST, LLC, Wilmington, Delaware; Thomas J. McKenna, Gregory M. Egleston, GAINEY MCKENNA & EGLESTON, New York, New York.

    *Counsel for Plaintiff*.

Lisa Schmidt, Alexander M. Krischik, Richards, LAYTON & FINGER, P.A., Wilmington, Delaware; Robert J. Kopecky, Joshua Z. Rabinovitz, KIRKLAND & ELLIS LLP, Chicago, Illinois.

    *Counsel for Defendants*.

---

## MEMORANDUM OPINION

December 10, 2020

BIBAS, *Circuit Judge*, sitting by designation:

Mark Elfers brought this suit on behalf of AbbVie in the wrong court. While AbbVie is a Delaware corporation, this case has nothing else to do with Delaware. Nor did the defendants agree to be sued here. So this case does not belong in a Delaware federal court.

Even if venue were proper, Elfers's theory is internally inconsistent. AbbVie's directors and officers, he alleges, are villains who knowingly covered up the company's wrongdoing. But they are also, in his telling, the victims: They were duped by that coverup into approving a bad stock deal. Those two allegations are essential to his federal securities claims. But both cannot be true. His federal claims thus fail. And because he has waived his other claims, his entire case fails too.

Because this suit was filed in the wrong venue and does not bring a viable federal claim, I will dismiss it.

## I. BACKGROUND

AbbVie is a drug company. Elfers owns AbbVie stock. He has sued some of the company's directors and officers, claiming to act on AbbVie's behalf.

Elfers alleges that the defendants let AbbVie commit fraud. Starting in 2013, he says, the company gave "illegal kickbacks" to doctors who prescribed one of its drugs. Compl. ¶255, D.I. 12. But eventually, an AbbVie subcontractor blew the whistle. *Id.* ¶¶76, 81. California learned of the whistleblower's claims and sued AbbVie. Compl. ¶¶84–86. When investors heard about the California case in 2018, AbbVie's stock price fell 4.5%. *Id.* ¶411.

According to Elfers, the defendants knew about the kickbacks for years but intentionally concealed them. *Id.* ¶¶251–396, 442–43. Yet from 2014 to 2018, some of the

defendants (the directors) let AbbVie buy back some of its stock from investors. *Id.* ¶¶494–96. Because the company's stock price did not yet reflect the wrongdoing, Elfers says, the company overpaid for its own stock. *Id.* ¶493.

Elfers claims that the defendants violated §10(b) of the federal Exchange Act, which bans the use of deception or manipulation in connection with a securities transaction (the buybacks). 15 U.S.C. §78(j). He also brings six other federal and state claims. *Id.* ¶¶476–491, 504–21. The defendants have moved to dismiss the entire case. They argue both that Elfers sued in the wrong venue and that he did not bring a valid federal claim.

## II. THE DISTRICT OF DELAWARE IS NOT A PROPER VENUE FOR THIS CASE

I agree that Elfers sued in the wrong venue. Federal plaintiffs must sue in a venue that is authorized by federal law, unless the defendant consents to a different venue. 14D Charles Alan Wright et al., Federal Practice & Procedure §3801 (4th ed.). But no law lets Elfers sue in the District of Delaware. And the defendants never agreed to be sued here. So the district is not a proper venue for Elfers's case.

Elfers does not and cannot argue that federal law authorizes him to sue in this district. The general federal venue law does not let him bring his case here, because no defendant lives in Delaware, no relevant events happened in Delaware, and many relevant events happened in the Northern District of Illinois. 28 U.S.C. §1391; D.I. 10, Ex. 2 ¶2. For those same reasons, and because no defendant does business in Delaware, the Exchange Act's venue provision does not apply either. 15 U.S.C. §78aa(a).

Elfers replies that the defendants consented to this venue. He points out that under Delaware law, a Delaware corporation's directors and officers automatically agree (by taking

3

the job) to submit to the Delaware courts' jurisdiction, and thus this Court's. 10 Del. C. § 3114. Because the defendants have consented to the Delaware courts' jurisdiction under § 3114, he says, they have also consented to Delaware as a venue.

I disagree. Venue and jurisdiction are "quite different concepts." Wright et al. § 3827. Jurisdiction is a court's power to hear a case; a proper venue is a place where a lawsuit is deemed convenient. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–68 (1939). Just because a defendant has conceded that a court has power over him, it does not mean that the court would be a convenient venue for a particular case. And when a defendant consents to a court's jurisdiction only "impliedly," because of an automatic state law, he has said nothing about the court's convenience. *Olberding v. Illinois Cent. R.*, 346 U.S. 338, 340–41 (1953). So his consent to jurisdiction "has nothing whatever to do with rights under [the venue laws]." *Id.*

The defendants consented to this Court's jurisdiction only implicitly, under § 3114. That does not mean they consented to this district as a venue. Because Elfers needed their consent to bring this case here, I will dismiss it. *Accord In re First Solar, Inc.*, No. 12-417-GMS-CJB, 2013 WL 4051739, at *1 n.1 (D. Del. July 12, 2013) ("[The] Director Consent Statute does not serve as the sole basis for finding an express waiver of the federal venue privilege.").

### III. ELFERS HAS NOT PLED A VALID § 10(b) CLAIM

I will also dismiss this case because it fails on the merits. Elfers does not bring a valid federal claim: Even if every allegation in his complaint were true, the defendants would not have violated § 10(b). Section 10(b) bans deception. But AbbVie (the real plaintiff here)

4

was not deceived when it bought its stock back. The buybacks were overseen by AbbVie's directors—the very people Elfers accuses of lying. While one corporate actor might be able to deceive another, a single actor cannot deceive *itself*. So there was no deception. And thus the directors did not violate § 10(b). Once Elfers's § 10(b) claim fails, his remaining claims fail too.

### A. To win a § 10(b) claim, the plaintiff must have been deceived

Section 10(b) bans the use of "any manipulative or deceptive device" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). The law's "fundamental purpose" is to "implement[] a philosophy of full disclosure." *Santa Fe Indus. v. Green*, 430 U.S. 462, 478 (1977) (internal quotation marks omitted). To win a § 10(b) claim, a plaintiff must show that the "defendants made a misstatement or an omission of material fact … upon which [he] reasonably relied." *Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007). In other words, he must show that he was deceived.

In a derivative suit like this one, the named plaintiff is "nominal"; "the real party in interest" is the company. *In re Pittsburgh & Lake Erie. Railroad. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1061, 1068 (3d Cir. 1976). So as Elfers admits, to win his § 10(b) claim, he "must show the victim of the misleading statements is [AbbVie] itself." D.I. 17, at 20.

### B. AbbVie was not deceived

But AbbVie was not misled. A story of deception needs two characters: the liar and the dupe. Directors can thus deceive their company if, for example, they need shareholder support for a transaction and lie to the shareholders to get that support. *Goldberg v. Meridor*,

5

567 F.2d 209, 217 (2d Cir. 1977). Conversely, when "approval [of a deal] by the shareholders is not necessary"—when the board is the only character—a §10(b) deception claim will normally fail; "full disclosure to a disinterested board of directors" defeats it. *Maldonado v. Flynn*, 597 F.2d 789, 793 (2d Cir. 1979); *cf. Healey v. Catalyst Recovery of Pa., Inc.*, 616 F.2d 641, 647 (3d Cir. 1980) (holding that minority shareholders cannot sue directors under §10(b) for withholding information about a transaction unless "there is a reasonable probability that a shareholder could have used the information to [block it]").

Elfers's story fails because it has only one character. He claims that AbbVie was deceived when it bought back stock. But AbbVie is a corporation, "simply a form of organization used by human beings." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014). It cannot literally be deceived. If AbbVie was deceived, a *person* at AbbVie must have been. And since the buybacks were approved by AbbVie's directors (and apparently nobody else), Compl. ¶¶ 494–96, the *directors* must have been deceived.

But Elfers has already cast the directors for a different part: his liars. His whole theory of the case is that they "*knew*" about (but hid) AbbVie's wrongdoing. Compl. ¶497 (emphasis added). They could not have both lied about the wrongdoing and yet been tricked by those lies. Elfers needed a second corporate actor to play the dupe. Without one, he has not alleged deception. His §10(b) claim thus fails.

If Elfers is right, AbbVie was badly mismanaged. But "claims essentially grounded on corporate mismanagement are not cognizable under federal law." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 638–39 (3d Cir. 1989). Section 10(b) bans only one specific form of mismanagement: mismanagement by deception. "Once full and fair disclosure has

6

occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." *Santa Fe Indus.,* 430 U.S. at 478. Because Elfers is really complaining that AbbVie got a bad deal—not that it was tricked—I will dismiss his §10(b) claim.

### C. The remaining claims fail too

Because the §10(b) claim fails, I will also dismiss Elfers's remaining claims.

1. *Federal claims*. Elfers also brought claims under §§14(a) and 20(a) of the Exchange Act. But he has withdrawn his §14(a) claim. D.I. 17, at 20. And §20(a) applies to people "who exercise control over [someone who] has committed a violation of [§]10(b)." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). Thus, to win a §20(a) claim against one defendant, a plaintiff must prove that someone else violated §10(b). But nobody violated §10(b). So I must dismiss Elfers's §20(a) claim.

2. *State claims*. Elfers has waived his four state-law claims. In their motion, the defendants argued that under a forum-selection clause in AbbVie's charter, Elfers could not sue in this court. D.I. 15, at 6–10, 14–15. Elfers responded that the clause "is not enforceable against [his] *federal* derivative claims." D.I. 7 (emphasis added). He never argued that he could bring his state-law claims here. He has implicitly conceded the point.

\* \* \* \* \*

This Court is the wrong venue for this case. Even if it were the right venue, Elfers does not have a viable federal claim. And he has waived his right to bring his state claims here. I will dismiss this suit without prejudice.